Alfredo Provencio
AM4049/RB-244Up
CTF-North-A
P.O. BOX 705
Soledad, CA 93960-0705

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

APR 0 2 2018

FILED
DOCKETED
DATE        INITIA

Petitioner/Appellant In Pro Se

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

Alfredo Provencio,            )
                              )
      Petitioner-Appellant,   )
                              )
v.                            )
                              )
Shawn Hatton,Warden,          )
                              )
      Respondent-Appellee.    )
                              )
------------------------------)

Case No.: __18-15170__
[Dist.Ct.#1:15-cv-01327-LJO-MJS

MOTION FOR CERTIFICATE OF
APPEALABILITY (COA), FOLLOWING
DENIAL OF COA BY THE EASTERN
DISTRICT COURT

[Circuit Ct.Rule 22-1 (d)]

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION......................................... 1-2

ISSUES ON WHICH COA IS SOUGHT.................. 3

LEGAL STANDARD FOR ISSUANCE OF COA............. 4-5

STATEMENT OF THE CASE......................... 6-7

STATEMENT OF FACTS ALLEGED ON HABEAS CORPUS.... 8

LEGAL ARGUMENT:

    I.     REASONABLE JURISTS COULD DIFFER AS TO
           WHETHER THE  EASTERN DISTRICT COURT
           ERRED IN FAILING TO GRANT AN EVIDENTIARY
           HEARING ON PETITIONER'S CLAIM'S........... 9-10

    II.    REASONABLE JURISTS COULD DIFFER AS TO
           WHETHER PORTION OF PETITIONER'S
           INTERVIEW WITH POLICE SHOULD HAVE
           BEEN SUPPRESSED PURSUANT TO MIRANDA........ 11-21

    III.   REASONABLE JURISTS COULD DIFFER AS TO
           WHETHER THE ALLEGED INSTRUCTIONAL
           ERROR IN THIS CASE RESULTED IN A
           HIGHLY PREJUDICIAL AND IN CONFUSION
           AS TO THE APPLICABLE STATE OF MIND
           FOR THE OFFENSE OF CONTINUOUS SEXUAL
           ABUSE OF A MINOR.........................22-23

    IV.   REASONABLE JURISTS COULD DIFFER AS TO
           WHETHER THERE WAS INSUFFICIENT EVIDENCE
           TO SUPPORT A FINDING THAT PETITIONER
           CAUSED GREAT BODILY HARM TO THE VICTIM.....24-25

CONCLUSION.......................................... 26

PROOF OF SERVICE BY U.S. MAIL........................ 27

EXHIBITS............................................. "A"

1  TO: PANEL ASSIGNED TO CONSIDER WHETHER OR NOT TO ISSUE THE
2  REQUESTED CERTIFICATE OF APPEALABILITY (COA).

3                          INTRODUCTION
4      Pursuant  to 28 U.S.C. §2253, Rule 22 FRAP, and Ninth Circuit
5  Rules, Rule 22-1 (d), Appellant **Alfredo Provencio** (hereinafter
6  "Appellant"), hereby moves this Honorable Court of Appeals for
7  the Ninth Circuit of California for the Issuance of a **Certificate**
8  **of Appealability (COA)**, Following the Declining to Issue Certificate
9  of Appealability by the Honorable Lawrence J. O'Neill, United
10 States District Judge.

11     On October  31, 2017, The Honorable Magistrate Judge Machael J.
12 Seng filed its Findings and Recommendations recommending that
13 Petitioner's Petition for Writ of Habeas Corpus 28 U.S.C. §2254
14  be denied.  Subsequently, and in a timely fashion On December 04,
15 Petitioner constructively filed  his Objections to Magistrate
16 Judge's findings and Recommendations (hereafter F&R).

17     On December 28,2017 The Honorable Lawrence J. O'Neill, United
18 States Chief District Judge Issue a Court Order Adopting Findings
19 and Recommendation, Denying Petition for Writ of Habeas Corpus, And
20 Declining to Issue Certificate of Appealability.  Petitioner's
21 Petition was denied with prejudice.

22     On January 4,2018 Petitioner's Constructively filed a Motion
23 entitled **Motion to Alter or Amend**.  Subsequently, On January 25,2018
24 Petitioner constructively filed his **Notice of Appeal** in the Eastern
25 District Court.

26     On January 25, 2018 Petitioner also Constructively filed another
27 document addressed to the Ninth Circuit Court of Appeals, Entitled
28 **Appellant'S Motion for Extension of Time to File Application for**

<u>Certificate of Appealability (COA) in the Ninth Circuit Court of</u>
<u>Appeals.</u>

On February 7,2018 The United States Court of Appeals for the Ninth Circuit Issue a Court Order Stating that: The Court's records indicate that this appeal was filed during the pendency of a timely filed Fed.R.P. 4(a) motion. The Notice of Appeal is therefore ineffective until entry of the order disposing of the last such motion outstanding. And the Court held all proceedings in abeyance pending the district court's resolution of the pending January 8, 2018 Motion.

On March 12, 2018, The Ninth Circuit Court of Appeals issie a Court Order Lifting its prior Order of February 7,2018.

On March 18,2018, Petitioner constructively filed a timely Notice of Appeal.

Pettitioner-Appellant respectfully feels a COA IS NECESSARY and should be Issued to allow full briefing with the representation of an Attorney.

-2-

ISSUES ON WHICH COA IS SOUGHT

1. WHETHER THE DISTRICT COURT ERRED IN FAILING TO GRANT AN EVIDENTIARY HEARING TO DETERMINE THE PREJUDISIAL EFFECT ON APPELLANT'S CLAIMS

2. WHETHER THE DISTRICT COURT FAILURE TO CONDUCT AN EVIDENTIARY HEARING ON ALL OF APPELLANT'S CLAIMS CONSTITUTES AN ABUSE OF DISCRETION AND A DENIAL OF ACCESS TO THE COURTS

3. WHETHER THE DISTRICT COURT DENIAL OF PETITIONER'S CLAIM REGARDING APPELLANTS INTERVIEW WITH POLICE WHICH SHOULD HAVE BEEN SUPPRESSED PURSUANT TO MIRANDA, CONSTITUTE AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW AND OR WAS BASED ON UNREASONABLE DETERMINATION OF THE FACTS

4. WHETHER WITH REGARD TO APPELLANTS CLAIM THAT ALLEGED INSTRUCTIONAL ERROR WAS HIGHLY PREJUDICIAL AND RESULTED IN A REVERSIBLE CONFUSION AS TO THE APPLICATION CONSERNING THE STATE OF MIND FOR THE OFFENSE OF CONTINUOUS SEXUAL ABUSE OF A MINOR

5. WHETHER, WITH REGARD TO APPELLANTS CLAIM THAT THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING THAT APPELLANT CAUSED GREAT BODILY HARM TO THE VICTIM, THE DISTRICT COURT DECISION AS WELL AS TO THE CALIFORNIA COURT OF APPEALS DECISION WAS CONTRARY TO FIRML:Y ESTABLISHED U.S.SUPREME COURT PRESEDENTS AND INVOLVES AN UNREASONABLE DETERMINATION OF THE FACTS OF THIS PARTICULAR CASE

-3-

1    ## LEGAL STANDARD FOR ISSUANCE OF COA

2    In the U.S. Supreme Court decision in Miller-El v.Cockrell,537

3    U.S. 322, 123 S.Ct. 1029 (2003), the court clarified the Standard

4    for issuance of a COA, as follow:

5        .....A prisoner seeking a COA need only demonstrate
         a "Substancial Showing for the denial of a consti-
6        tutional right". A petitioner satisfies this
         standard by demonstrating that jurist of reason
7        could disagree with the District Court's resolu-
         tion of his constitutional claims or that jurists
8        could conclude the issue presented are adequate
         to deserve encouragement to proceed further.
9        Id.,at 123 S.Ct. at 1034; Citing Slack v.McDaniel,
         529 U.S. 473, 484 (2000).

10       Reduced to its essentials, the test is meet
         where the petitioner makes a  showing that "the
11       petition should have been resolved in a different
         matter or that the issue presented were 'adequate
12       to deserve encouragement to proceed further.'"
         Id., at 1039, Citing Barefoot v.Estelle, 463 U.S.
13       880 (1983).

14       This means that the petitioner does not have to
         prove that the District Court was necessarily "Wrong"
15       Just that its resolution of the constitutional
         claim is "debatable" :

16
         We do not require petitioner to prove, before
17       the issuance of a COA that some jurists would
         grant the petition for habeas corpus. Indeed,
18       a claim can be debatable even though every jurist
         of reason might agree after the COA has been
19       granted and the case has received full conside-
         ration, that petitioner will not prevail.
20       As we stated in Slack, where a district court
         has rejected the constitutional claims on the
21       merits, the showing required to satisfy §2253
         (c) is straightforward: The petitioner must
22       demostrate that reasonable jurists would find
         the district court's assessment of the constitu-
23       tional claims debatable or wrong.

24   Applying the above standard for granting a COA, this Honorable

25   court has acknowledged that the standard is "relatively low"). See

26   Jennings v. Woodford, 290 F.3d 1006, 1010 (9th Cir. 2002) [Citing

27   Slack, at 483]. Moreover, because the COA ruling is not an adjudi-

28   cation of the merits of the appeal, it does not require a showing

                                    -4-

1  that the appeal will succeed.  See Miller-El v.Cockrell, Supra,

2  537 u.s. at 337.   Finally, doubts about the propriety of a COA must

3  be resolved in the petitioner's favor. Lambright v. Stewart, 220

4  F.3d 102, 1025 (9th Cir. 2000) [en banc].

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    ## STATEMENT OF THE CASE

2    Petitioner is in the custody of the California Department of
3    Corrections and Rehabilitation (CDCR), pursuant to the September
4    10, 2012 judgment of the Kings County Superior Court, imposing a
5    term of fifty years to life for continuous sexual abuse of a child,
6    with allegations that Petitioner inflicted great bodily harm on
7    the victim and had a prior "strike" conviction.  Petitioner also
8    was convicted of exhibiting lewd material to a minor in a separate
9    judgment.

10   On April 3, 2014, the California Court of Appeal, Fifth Appellate
11   District, reversed the judgment for exhibiting lewd material to a
12   minor but otherwise affirmed.  On June 11, 2014, the California
13   Supreme Court denied Petitioner's petition for review.

14   On August 31, 2015, Petitioner filed his Federal petition for
15   Writ of Habeas Corpus Pursuent 28 U.S.C.§2254.  On October 30, 2015
16   Respondent filed an answer.  Petitioner filed no traverse.

17   On October 31,2017 , The Honorable Michael J.Seng,United States
18   Magistrate Judge, Issue its Findings and Recommendation to Deny.
19   Petitioner's Petition for Writ of Habeas Corpus.  On December 4,
20   2017, Petitioner Constructively filed His Objections to Magistrate
21   Judge's Findings and Recommendations.[Petitioner was Granted an
22   Extension of time On November 30,2017 DOC#27].

23   On December 28,2017, The Honorable Lawrence J.O'Neill, United
24   States Chief District Judge, Issue an Order Adopting Findings and
25   Recommendation, Denying Petition for Writ of Habeas Corpus, and
26   Declining to Issue Certificate of Appealability (COA).

27   On January 4,2018 Petitioner constructively filed One Motion in
28   the District Court Entitled: Motion to Alter or Amend Pursuent

-6-

1  Civil Rule 52(b).  On January 25,2018 Petitioner Filed his Notice

2  of Appeal in the Eastern District, As well as a Motion for Extension

3  of time to file his Application for COA in the Ninth Circuit Court

4  of Appeals.

5      On February 7, 2018, The Ninth Circuit Court of Appeal's Issue

6  a Court ORDER, that the proceedings of this case in that court

7  shall be held in abeyance pending the district court's resolution

8  of the pending January 8,2018 Motion.

9      On March 12, 2018, the Honorable Lawrence J.O'Neill, United

10  States Chief District Judge Issue an Order  Denying Motion for

11  Relief from Judgment and Declining to Issue Certificate of Appea-

12  lability.  Thereafter, On March 12, 2018, The Ninth Circuit Court

13  of Appeals Issue an ORDER Lifting its Prior Order of February 7,

14  2018 Staying appellate proceedings.

15      On March 18, 2018, Petitioner's Constructively filed a new

16  Notice of Appeal and a Notice that he will be filing a COA Motion

17  in a timely fashion.

18

19

20

21

22

23

24

25

26

27

28

1  **STATEMENT OF FACTS ALLEGED IN HABEAS CORPUS**

2  For the only limited porpuse of this Court Proceedings and without

3  asepting as true any factual facts or evidence, for the exceptional

4  sircumstance that the factual Backgrouds set forth in the State

5  Court of Appeals Opinion  are adopted until prove otherwishe.

6  Accordingly, pursuant the rules of court petitioner adopts the facts

7  set in the Fifth District Court of Appeal's Opinion . Cited as

8  People-v-Provencio, No.F065755, 2014 WL 1327984, at *1-3 (Cal. Ct.

9  App. April 03, 2014.)

-8-

## LEGAL ARGUMENT
### I

### REASONABLE JURISTS COULD DIFFER AS TO WHETHER THE EASTERN DISTRICT COURT ERRED IN FAILING TO GRANT AN EVIDENTIARY HEARING ON PETITIONER'S CLAIMS

In this particular case Petitioner a pro se litigant filed his petition for writ of habeas corpus under 28 U.S.C.§2254, in which he raised inter alia that (1) portions of his interview with police should have been suppressed pursuant to Miranda; (2) instructional error resulted in confusion as to the applicable state of mind for the offense of continous sexual abuse of a minor; and (3) there was insufficient evidence to support a finding that Petitioner caused great bodily harm to the victim.

Under §2254 (e)(2) As Amended by the AEDPA a District Court Shall not hold an Evidentiary Hearing, "If the applicant has failed to Develop the factual basis of the claim in State Court Proceedings" See Jones v.Wood,114 F.3d 1002 at 1013 (9th Cir.1997). However, " failure to develope the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault attributable to the prisoner or the prisoner's counsel." See Williams v. Taylor (2000) 529 U.S. 420, 423, 120 S.Ct. 1479; Baja v.Pucharme, 187 F.3d 1075, 1078 (9th Cir. 1999).

In this Particular and extraordinary case although petitioner is in the dark with no experience or even with the most comun or basic aknowledge on how to litigate as is evident in his petition, petitioner has exercised diligence in bringing his constitutional claims before state and federal cours and has not failed to develope the factual bases of either of his claims, Rather the State Court and most resently the District Court has denied him the opportunity to

-9-

1  Develope the factual facts by failing  to hold and evidentiary
2  hearing and as such the District court was required to hold an
3  evidentiary hearing in the interest of justice, and the failure to
4  do so constitutes a denial of access to the courts and a miscarriage
5  of justice.  Townsend v. Sain (1963) 372 U.S. 293,312, 83 S.Ct.745,
6  Overruled on other grounds in Keeney v.Tamayo-Reyes (1992)504 U.S.
7  1,4, 112 S.Ct. 1715; Insyxiengmary v.Morgan, 403 F.3d 657,699
8  (9th Cir. 2000).

9     Petitioner raises several colorable claims for relief, each
10 deserving to be heard at an evidentiary hearing, and each in their
11 own capacity would establish the right to relief....As a General
12 Rule when a petitioner meets the AEDPA threshold and the petitioner
13 raises a colorable claim for relief that rest on a credibility
14 determination.  The Court should not deny the petition without an
15 evidentiary hearing, because such a denial constitutesan abuse of
16 discretion and a denial of access to the courts. Eart v.Ornoski,
17 431 F.3d 1158,1169 (9th Cir. 2005); See also Schriro v.Landrigain
18 (2007)--U.S.--127 S.CT.1993.(Refusal to grant Evidentiary Hearing
19 constitutes Abuse of Discretion and Denial of Access to the Courts)
20 Therefore, pursuant to Clearly Established Federal Law as determined
21 by the United States Supreme Court and as interpreted by this
22 Honorable Ninth Circuit Court of Appeals. Petitioner was entitled
23 to an evidentiary hearing as well as he is now entitled to a
24 Certificate of Appealability (COA), because  a Reasonable
25 Jurist of reason Could disagree  with the District Court resolution
26 of his Constitutional Claims.  Accordingly, COA Application
27 Should be granted and Attorney be Appointed for Petitioner's
28 Representation.

-10-

LEGAL ARGUMENT
II

REASONABLE JURISTS COULD DIFFER AS TO
WHETHER PORTION OF PETITIONER'S
INTERVIEW WITH POLICE SHOULD HAVE
BEEN SUPPRESSED PURSUANT TO MIRANDA

In his Habeas Corpus Petition, Petitioner alleged that his constitutional rights were violated when he was interviewed by the police and due to his lack of experience and knowledge on how to prepare his claim he relied in his State Petition for Review and due to same lack of the most basic knowledge he did not file a Traverse which is a key procedural matter in the outcome and litigation and as such and in the interest of justice this Honorable Court should issue the requested COA and give the fair oportunity to litigate his claim with the assistance and representation of an Attorney.

In Miranda v. Arizona, 384 U.S.436,444 (1966), the United States Supreme Court held that "[t]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Thus, "Suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation. See Thompson v.Keohane,516 U.S. 99, 107 (1995); Miranda, 384 U.S. at 473-74. Once Miranda warnings have been given, "all questioning must cease" if a suspect makes a clear and unambiguous  statement invoking his constitutional rights.  See Smith v. Illinois, 469 U.S. 91, 98 (1984).

///

-11-

1   Miranda warnings are required only when a suspect interrogated
2   by the police is "in custody." Thompson, 516 U.S. at 102.
3   Custodial interrogation means "questioning initiated by law enfor-
4   cement officers after a person has  been taken into custody or
5   otherwise deprived of his freedom of action in any significant way."
6   Miranda,384 U.S.at444.  The relevant question is whether a "reaso-
7   nable person [would] have felt he or she was not at liberty to ter-
8   minate the interrogation and leave." Thompson, 516 U.S. at 112.
9   Resolving this question requires consideration of the following
10  two inquires:  (1) what were the overall circumstances surrounding
11  the interrogation; and (2) given those circumstances, would a
12  reasonable person in the suspect's situation have felt free to
13  terminate the interrogation and leave.  J.D.B. v.North Carolina,
14  564 U.S. 261, 270 (2011).  This is an objective inquiry.  Thus,
15  "Subjective views harbored by either the interrogating officers or
16  the person being questioned are irrelevant." Id.  (internal
17  quatation marks and citation omitted).
18      In this particular and extraordinary case, after agreeing to
19  speak with detectives about an unknown matter at the police station,
20  petitioner was taken from his front yard in the back of a patrol
21  car to the station where questioning began by a detective in an
22  interview room.  Petitioner was told he was free to leave.  After
23  interviewing petitioner for about an hour, the detective left the
24  room and returned with another detective.  The questioning became
25  accusatory.  The detective told petitioner they had completed a
26  "bunch" of interviews, their investigation clearly showed petiti-
27  oner was sexually abusing his daughter, the detectives wanted to
28  know why and asked petitioner if it was because he was not getting

-12-

1 attention from his wife. Petitioner responded by nodding his head
2 and saying. "mhm." The detective continued, stating he understood
3 that petitioner's daughter was a pretty girl and appellant knew he
4 was not getting the attention he deserved as a man from his wife.
5 At that point petitioner responded by nodding his head and stating:

6      Answer: mhm. I think at this point I mean you guys basically
7 already arrested me. I should get an attorney or something.

8      Question: Is that what you're asking for an attorney?

9      Answer: I don't want to talk. I don't want to say anything
10 I shouldn't say.

11      Question:mhm. Its your choice.

12      Answer: Yeah, I mean I have talked to you I've told you
13 everything.

14      Question: But you really haven't told me anything, that's
15 the thing.

16      Answer: No, I told you what I feel and I'm telling you what
17 I feel right now.

18      Question: And what is that? What do you feel right now?

19      Answer: That...that I should get an attrorney. These are
20 serious charges you're talking about.

21      Question: You have no idea.

22      Answer: No, I do.

23      Question: Here's the thing its that you are being charged
24 with the allegations are that you've been abusing her.

25      Answer: Yeah, I...I understand.

26      Question: For seven years.

27      Answer: I understand.

28      Question: Straight.

-13-

1    Answer: I understand.

2    Question: Not only.

3    Answer: Understand I don't have a family anymore now.  Do you

4 understand that?

5    Question: I do.

6    Answer: So everything that I am working for and doing that's

7 gone.  This is extremely serious.  This is my life, over.

8    Question:  That's why I would think that you would want to get

9 your side of the story out.

10    Answer:  No.  What I want to do is make sure that I have an

11 attorney before I say anything else.

12    Question:  Ok.  That's cool.

13   Id at CT 185-186.

14   If police take a suspect into custody and t hen interrogate the

15 person without informing of such rights, the person's responses

16 cannot be introduced into evidence to establish his or her guilt.

17 See Berkemer v.McCarty(1984) 468 U.S. 420, 429; Stanbury v. Cali-

18 fornia(1994) 511 U.S. 318,322;Howes v.Fields(2012) 565 U.S. 499,

19 508-509.  Miranda's primary concern is the "psychological pressures

20 'which work to undermine the individual's will to resist and to

21 compel him to speak where he would not otherwise do so freely,'"

22 which are created by ""incommunicado interrogation"" in an unfamiliar

23 "'police-dominated atmosphere.'" Maryland v.Shatzer(2010)559 U.S.

24 98, 103.  The Miranda court reasoned that "[u]nless adequate

25 protective devices are employed to dispel the compulsion inherent

26 in custodial surroundings, no statement obtained from the defendant

27 can truly be the  product of his free choice." Miranda, Supra,

28 384 U.S. at p. 458.

-14-

1     In determining whether a person is in custody for purposes of

2 applying Miranda, the issue is whether, in light of the "'objective

3 circumstances of the interrogation,' [citation], ' a reasonable

4 person [would] have felt he or she was not at liberty to terminate

5 the interrogation and leave.'" howes, Supra, 565 U.S. at p. 509.

6 "And in order to determine how a suspect would have 'gauge[d]' his

7 'freedom of movement,' courts  independly examine 'all of the

8 circumstances surrounding the interrogation.'"  (Ibid.)

9     Courts have identified factors that are relevant in determining

10 whether the defendant was in custody during police questioning.

11 People v. Aguilera (1996) 51 Cal.App. 4th 1151,1161, at p.1162.

12 "No one factor is dispositive.  Rather, the Reviewing court should

13 look at the interplay and combined effect of all the circumstances

14 to determine whether on balance they created a coercive atmosphere

15 such that a  reasonable person would have experienced a restraint

16 tantamount to an arrest." (Ibid.)  The relevant factors include:

17         "[(1)]   Whether contact with law enforcement
18           was initiated by the police or the person
          interrogated, and if by the police, whether
          the person voluntarily agreed to an interview;
19

20         "[(2)]   whether the express purpose of the
          interview was to question the person as a
21           witness or a suspect;

22         "[(3)]   where the interview took place;

23         "[(4)]   Whether police informed the person that
          he or she was under arrest or in custody;
24

25         "[(5)]   Whether they informed the person that
          he or she was free to terminate the interview
          and leave at any time and/or whether the
26           person's conduct indicated an awareness of
          such freedom;
27

28 ///

1    "[(6)]  Whether there were restrictions on the
2    person's freedom of movement during the
     interview;

3    "[(7)]   How long the interrogation lasted;

4    "[(8)]   How many police officers participated;

5    "[(9)]   Whether they dominated and controlled
     the course of the interrogation;

6    "[(10)]   Whether they manifested a belief that
7    the person was culpable and controlled the
     course of the interrogation;

8    "[(11)]   Whether the police were aggressive,
9    confrontational, and/or accusatory;

10   "[(12)]   Whether the police used interrogation
     techniques to pressure the suspect; and

11   "[(13)]   Whether the person was arrested at the
12   end of the interrogation."  (Ibid.)

13      Petitioner is entitled to the requested COA and Habeas Corpus

14   Relief in Light of <u>Miranda</u>, because he meet the treshold requireme-

15   nts as follow:

16      1.:  Petitioner voluntarily agreed to be questioned by

17   detectives about unknown matter at the police station, He was taken

18   from his yard in the back of a patrol car to the police station

19   where questioning began by a detective in an interview room.  Peti-

20   tioner was told he was free to leave.   However, even where a susp-

21   ect voluntarily goes t o a police station for an interview if "once

22   there, the circumstances become such that a reasonable person would

23   not feel free to leave, the interrogation can become custodial."

24   See <u>United States v.Kim</u>(9th Cir. 2002) 292 F.3d 969,975.

25      2.2.:  The express purpose of the interview was to question

26   petitioner as a suspect, i.e., He was taken from his home in the

27   back of a squad car and placed in a room with two detectives, one

28   of whom accused him of child molestation.  The detective advised

-16-

1  petitioner they had conducted a "bunch" of interviews and they
2  knew he had done it and merely wanted to know why?. There were no
3  other witnesses. Given the tenor and manner of the detective's
4  interrogation, the sole purpose of the questioning was to obtain a
5  confession. Berkemer v.McCarty(1984)468 U.S. 420,442.

6      3.: The interrogation of petitioner occurred behind a close
7  door in the interrogation room of the Hanford Police Department  by
8  two detectives (Det.Mathews and his partner Det.    ).  At the
9  police station, "the detectives possessed all the advantages inclu-
10 ding but not limited to the principal psychological factors.  See
11 Miranda, Supra,384 U.S. at p.449.

12      4.: At the outset, Detective Mathews told petitioner after
13 questioning began that he was free to leave.  However, After intervi-
14 ewing petitioner for about an hour, the detective left the room and
15 returned with another detective and the questioning become accusa-
16 tory.  i.e., The detective told petitioner they had completed a
17 "bunch" of interviews, their investigation clearly showed petitioner
18 was sexually abusing his daughter.  This interview was recorded
19 with audio and video equipment, which clearly shows that the
20 circumstances had significantly changed.  No longer were police
21 asking petitioner  about unknown matter...The detectives  asked an
22 unrelenting number of accusatory questions, the detective just
23 wanted to know why and asked petitioner if it was because he was
24 not getting attention from his wife.

25     The mere recitation of the statement that the suspect is free to
26 leave or terminate the interview...does not render an interrogation
27 non-custodial per se.  United States v. Craighead(9th Cir. 2008)
28 539 F.3d 1073, 1088.  This Honorable Reviewing Court must consider

-17-

the delivery of the statements within the context of the scene as a whole. (Ibid.) This is because the <u>Miranda</u> test for custody "does not ask whether the suspect was told that he was free to leave; the test asks is whether 'a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." As Professor <u>Wayne LaFave</u> has pointed out in his treatise, Criminal Procedure, when a suspect has been told by the police that he is not under arrest and can leave at any time, but the contemporaneous conduct of the police nullifies that advice, the advice "will not carry the day." (2 LaFave et al., Criminal Procedure (4th Ed.2015) §6.6 (d),p.820, fn.64.) Courts have concluded that, under the circumstances of the particular case, advising the suspect that he was not under arrest and was free to leave was insufficient to support a conclusion that he was not in custody for purposes of <u>Miranda</u>. See <u>United States v.Hashime</u> (4th Cir. 2013) 734 F.3d 278, 284 [telling the individual being interrogated he is free to leave "is not "talismanic" or sufficient in and of itself to show a lack of custody"]; <u>United States v.Cavazos</u> (5th Cir.2012) 668 F.3d 190, 195.

     5.: Although petitioner was not handcuffed and first only Detective Mathews interrogated petitioner , after about one hour the detective left the room and returned with another detective and at this point the questioning become accusatory....This extraordinary factors wight in favor of finding that petitioner was in custody.

     <u>6.:</u> The remaining factors involve the nature of the interrogation: Whether the police/detectives (1) dominated and contro-
///

-18-

1   lled the interrogation; (2) manifested a belief petitioner was
2   culpable and they had evidence to prove it; (3) were aggressive,
3   confrontational, and accusatory; (4) used interrogation techniques
4   to pressure petitioner; and (5) arrested petitioner at the end of
5   the interrogation.  See Aguilera, Supra, 51 Cal.App. 4th at p.1162.
6   All these weigh strongly in favor of a determination that petitioner
7   was in custody. United States v.Beraun-Panez(9th Cir. 1987) 812 F.2d
8   578,579;People v. Lopez(1985) 163 Cal.App.3d 602, 608, fn.4.
9   Accusatory questioning is more likely to communicate to a reasonable
10  person in the position of petitioner that he was not free to leave.

11      7.:  After petitioner was accused of molesting the victim... he
12  invoked his right to counsel and the detective continue to ask
13  accusatory questions and  arrested him.

14      8.:  Taking into consideration all the factors, this Honorable
15  court should issue the requested COA and conduct a denovo review
16  because the factual evidense shows that  a reasonable person in
17  petitioner's circumstance would not have felt free to leave.  Thus,
18  Petitioner was in custody during the interrogation and his inter-
19  view was inadmissible.

20      The court of appeals  as well as the District court relied on
21  People v.Moore(2011) 51 Cal.4th 386,402-403 in concluding there
22  had been no custodial interrogation in petitioner's case. (Cal. Ct
23  of Appeals Opn.pp.9-13; and District Court findings and recommen-
24  dations at pp.10-20.)  However, Moore is not on point because the
25  interrogation there was vastly different from Petitioner's.

26      i.e., In Moore, a police officer asked the defendant, who
27  was the last person to see the victim alive, to give a witness
28  statement at the police station.  (Moore,Supra,51 Cal.4th at p.396.

-19-

1 | Once in the police station interview room, a police investigator
2 | told the defendant he was not under arrest and was free to leave.
3 | (Id. at p.402). The defendant was not restrained, and he was
4 | interviewed for one hour and 45 minutes. (Ibid.) The questioning
5 | initially focused on filling in the details of the defendant's
6 | story as a witness rather than as a suspect, but "[a]fter a while.
7 | ....the detectives interjected some more accusatory and skeptical
8 | questions." (Ibid.) The investigators asked the defendant whether
9 | he burglarized the victim's house, they urged the defendant to be
10 | honest, and they asked various questions about the defendant's prior
11 | arrests and other matters that "conveyed their suspicion of the
12 | [the] defendant's possible involvement." (Ibid.) The police
13 | ultimately declined the defendant's request to be taken home and
14 | read the defendant Miranda advisement. Moore, at pp.401-402.

15 | The California Supreme Court concluded the defendant in Moore was
16 | not in custody during the bulk of the interview, reasoning. "At
17 | least until [the] defendant first asked to be taken home and his
18 | request was not granted, a reasonable person in [the] defendant's
19 | circumstances would have believed, despite indications of police
20 | skepticism, that he was not under arrest and was free to terminate
21 | the interview and leave if he chose to do so." Moore, Supra, 51 Cal.
22 | 4th at p.403. Significantly, in making this determination, the
23 | Court stated the interview was "not....particulary intense or
24 | confrontational." (Id. at p.402).

25 | In Moore, "police consistently conveyed to [the] defendant that
26 | they wanted to question him only as a witness; [the] defendant
27 | sought and received the assurance that he was being asked only to
28 | give a statement of what he had seen and heard that day." Moore,

-20-

1 Supra, 51 Cal.4th at p.403.   In sharp contrast in this particular
2 case nearly all of petitioner's interrogations by the  Detectives
3 of Hanford Police Department were pointed and accusatory....Detectiv
4 Mathews treated petitioner as guilty, confronted him with evidence
5 of his guilt.

6      In this particular and extraordinary case the error was highly
7 prejudicial which is reversible per se.....The revieweng court
8 review Miranda  errors under the 'harmless beyond a reasonable
9 doubt' standard propounded in Chaptman v. California, 51 Cal.App.
10 4th at p.1166......Since "A confession is like no other evidence.
11 Indeed, the defendant's own confession and statement is probably
12 the most probative and damaging evidence that can be admitted
13 against him." See Arizona v. Fulminante(1991) 499 U.S. 279, 296.
14 The erroneous admission and reading of the transcripts of the
15 interview of petitioner's to the jury and a viewing of the video
16 recording that show petitioner's nodding of the head and his "mhm"
17 responses which were part and parcel of his invocation of his
18 Miranda rights such that they should have been excluded on that
19 basis....the error was highly prejudicial and is reversible per se.
20      Thus, Petitioner has satisfied the prong and test requirements
21 for obtaining a COA because this Miranda claim alleged the denial
22 of a federal Constitutional right and is therefore necessary to
23 determine whether the District Court denial constitute an abuse of
24 discretion and or a miscarriage of justice and whether this case
25 should be remanded to the district court for an evidentiary hearing
26 or remanded to the state courts with directions to retry petitioner
27 without the interview evidence as inadmissible if the state chose
28 to retry this matter.

## LEGAL ARGUMENT
### III

REASONABLE JURISTS COULD DIFFER AS TO
WHETHER THE ALLEGED INSTRUCTIONAL
ERROR IN THIS CASE RESULTED IN A
HIGHLY PREJUDICIAL AND REVERSIBLE
ERROR AND IN CONFUSION AS TO THE
APPLICABLE STATE OF MIND FOR THE
OFFENSE OF CONTINOUS SEXUAL ABUSE
OF A MINOR

In his habeas corpus petition (28 U.S.C.§2254), Petitioner alleged that the trial court instructional error resulted in confiusing the jurors as to the applicable state of mind for the offense of continous sexual abuse of a minor. **i.e.,** the trial court instructed the jury that continous sexual abuse of a minor was a general intent offense even though there was evidence that some of the alleged conduct was lewd and lascivious act, a specific offense. (CT 127, 7RT 1105-1106.) Although the trial court did note in the instruction on lewd and lascivious acts with a minor and lewd and lascivious acts with a minor by force the requirement for a specific intent, the trial court failed to tie any such requirement to count 20, continous sexual abuse of a minor. (CT 127, 7RT 1106-1107.)

More specifically, as far as continous sexual abuse of a child under 14, the trial court instructed the jury that the defendant must have engaged "in three or more acts of substantial sexual conduct or lewd or lascivious conduct with the child." (6RT 945-947, CT 139.) The instruction also advised the jury that for lewd or lascivious conduct, any willful touching of a child must be "accomplished with the intent to sexually arouse the perpetrator or the child." (6RT 946, CT 139.) The instruction also informed the jury that "You cannot convict the defendant unless all of you

-22-

1   agree that he committed three or more acts over a period of at
2   least three months, but you do not all need to agree on which three
3   acts were committed." (CT 139, 6RT 946).

4       Petitioner contends that the trial court's instruction that
5   continous sexual abuse of a child under 14 required a general
6   criminal intent **was wrong and highly prejudicial**, although its
7   other instructions properly advised the jury of the specific
8   intents required for lewd acts by force.

9       Because the jury was also informed that it need not agree on
10  which three acts the defendant committed, is there not a significant
11  probability that al least some jurors found one or more of the
12  offenses committed were lewd and lascivious acts on a minor or lewd
13  acts by force on a minor.? COA is necesary to determine whether
14  there is a reasonable  probable that in view of the trial court's
15  instructional error that continous sexual abuse only required a
16  general criminal intent some jurors believed petitioner had
17  committed lewd and lascivious acts and made no finding that the
18  acts were accomplished with the requisite specific intent.

19      Thus, petitioner  has satisfied the prong test and requirements
20  for obtaining the requested COA because the  erroneous instructi-
21  onal error violated petitioner's rights to a unanimous verdict by
22  jury and  due process of law  guaranteed by the Fifth, Sixth and
23  Fourteenth Amendments of the United States Constitution.

24

25

26

27

28

-23-

<u>LEGAL ARGUMENT</u>
IV

REASONABLE JURISTS COULD DIFFER AS TO
WHETHER THERE WAS INSUFFICIENT EVIDENCE
TO SUPPORT A FINDING THAT PETITIONER
CAUSED GREAT BODILY HARM TO THE VICTIM

In his habeas corpus petition, Petitioner also alleged that, there was insufficient evidence to support a finding that Petitioner caused great bodily harm to the victim....Rather, there was simply no evidence that any force used was more than was necessary to accomplish the alleged offenses. The California Court of Appeals holds that the bruises of the victim's arms, along with her rectal bleeding and pain following petitioner's forcible sodomization of her, amounted to bodily harm within the meaning of section §667.61 (Opn.at p.19.) However, in this particular case there was not evidence which is reasonable, credible, and of solid value....such that a rational trier of fact could find the defendant/petitioner guilty beyond a reasonable doubt of inflicting bodily harm resulting from the use of force. See <u>People v. Castaneda</u>(2011) 51 Cal.4th 1292,1322; <u>Jackson v.Virginia</u>,<u>Supra</u> (1979) 443 U.S. 307, 317-320.; <u>People v.Maury</u>(2003) 30 Cal.4th 342,403; <u>People v.Boyer</u>(2006) 38 Cal.4th 412,480.

In <u>People v.Washington</u> (2012)210 Cal.App.4th 1042,1047, The court noted that a finding of great bodily injury injury will be sustained when there is "some physical pain or damage, such as lacerations, brusies, or abrasions." The <u>Washington</u> court cited <u>People v.Jara-millo</u>(1979)98 Cal.App.3d 830,836-837; <u>People v.Sanchez</u>(1982) 131 Cal.App.3d 718,733.;<u>People v.Escobar</u>(1992)3 Cal.4th 740; <u>People v. Caudillo</u>(1978)21 Cal.3d 562;<u>People v.Cross</u>(2008)45 Cal.4th 58.

///

1    Thus, petitioner has satisfied the prong test and requirements

2  for obtaining the requested COA because petitioner was deprived

3  of his constitutional Due Process Clause which protects the accused

4  against conviction except upon proof beyond a reasonable  doubt

5  of every fact and elements necessary to constitute the crime with

6  which he is charged.   See In re Winship,397 U.S.358,364 (1970).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>CONCLUSION</u>

For the foregoing reasons and authorities and extraordinary sircumstances, petitioner should be granted a COA on the issues designated herein.

Dated: <u>March 29, 2018</u>

Respectfully Submitted

By: _____
     Alfredo   Provencio

Petitioner-Appellant
In Pro Per.

Assisted By: _____
Francisco J. Medina
P-42343/RB-231L
CTF-North-A
P.O. BOX 705
Soledad, CA 93960

-26-

# PROOF OF SERVICE
# DECLARATION OF SERVICE BY U.S. MAIL

I, Alfredo Provencio ,CDCR#:AM-4049 ,declare that I am over the age of eighteen (18 ) years and I am the petitioner or plantiff in this cause of action: 28 U.S.C.§2254 & APPEAL

Filed or currently pending before this honorable court as case N. 18-15170

My mailing adreess is: CTF-North-A RB-244Up P.O. BOX 705  Soledad, CA 93960

Due to my in carceratio I'm not able to entrust the mailing of this legal matter to any other person for purposes of ensuring it`s proper legal service for that reason on March 29,2018

I turned over to prison officials in a timely fashion at the above address the afore stated documents for forwarding to the clerk of the court as well as to all parties so that the prison authorities may post it through the prison log system. I have therefore served the following:

PETITIONER-APPELLANT MOTION FOR CERTIFICATE OF APPEALABILITY (COA) FOLLOWING DENIAL OF COA BY THE EASTERN DISTRICT COURT EXHIBIT "A" THE NOTICE OF APPEAL

The original plus  the requiret copies to the court and a conformed copy to the parties or responden attorney`s ,in a sealed Envelope with fully prepaid postage addressed as follow:

[1] U.S. Court of Appeals
    Ninth Circuit
    P.O. BOX 193939
    San Francisco, CA 94119

[2] United States District Court
    Eastern District of Cal.
    2500 Tulare St.Suite#1501
    Fresno, CA 93721

[3] Office of the Attorney General
    2550 Mariposa Mall RM#5090
    Fresno, CA 93721

I declare under penalty of perjury and under the laws of the state of California that the foregoins is true and cerret Pursuant to 28 U.S. CA. & 1746(2), mail box rule& 2244 (d)(2) Smith-v-Duncan, 297 F. 3d 809,814 (9th Cir .2000); Huizar-v-Carey, 273 F.3d 1220,1223 (9th Cir.2001.)

DATE: 03/29/2018            Signature: Alfredo Pro
                                        Alfredo Provencio

-27-

# EXHIBIT
# COVER PAGE



EXHIBIT

DESCRIPTION OF THE EXHIBIT:

NUMBER OF PAGES TO THIS EXHIBIT: _____ 2 _____ PAGES.

JURISDICTION:        ( CHECK ONLY ONE )

☐        MUNICIPAL COURT

☐        SUPERIOR COURT

☒        APPELLATE COURT

☐        STATE SUPREME COURT

☐        UNITED STATES DISTRICT COURT

☐        STATE CIRCUIT COURT

☐        UNITED STATES SUPREME COURT

☐        GRAND JURY

# EXHIBIT
# A

1  Alfredo Provencio
   AM4049/RB-244Up
2  CTF-North-A
   P.O. BOX 705
3  Soledad, CA 93960

4

5  Petitioner/Appellant In Pro Se

6

7              UNITED STATES DISTRICT COURT

8              EASTERN DISTRICT OF CALIFORNIA

9

10  ALFREDO PROVENCIO,          )    Case No.:18-15170
                                )
11      Petitioner/Appellant,   )    [Dist.Ct.No.:1:15-CV-01327-LJO-MJS]
                                )
12  Vs.                         )    NOTICE OF APPEAL
                                )
13  SHAWN HATTON, WARDEN,       )
                                )
14      Respondent/Appellee.    )
                                )
15  _____  )

16

17      Pursuant to Rule 4 (a), Federal Rules of Appellate Procedure,

18  Petitioner Alfredo Provencio, In Pro Per, hereby appeals from the

19  Judgment of the Court Denying Petitioner's Motion for Relief from

20  Judgment denying petitioner's petition for Writ of Habeas Corpus,

21  and Declining to Issue Certificate of Appealability. This New

22  Judgment was entered on March 12, 2018, By the Honorable Lawrence

23  J. O'Neill United States Chief District JUdge.

24      Petitioner will be filing a Certificate of Appealability (COA)

25  in the (9th Cir. Court of Appeals) in a timely fashion.

26

27      Dated:March 18, 2018          Respectfully Submitted,

28                                    By: Alfredo Provencio
                                         Alfredo Provencio
                                      Petitioner-Appellant In Pro Per

# PROOF OF SERVICE
# DECLARATION OF SERVICE BY U.S. MAIL

I, ALFREDO PROVENCIO ,CDCR# AM-4049 ,declare that I
am over the age of eighteen (18 ) years and I am the petitioner or
plantiff in this cause of action: 28 U.S.C.§2254, AND
SUBSEQUENT APPEAL
Filed or currently pending before this honorable court as case
N.18-15170
My mailing adreess is: CTF-Nort-A RB-244Up
P.O. BOX 705 Soledad, CA 93960
Due to my in carceratio I'm not able to entrust the mailing of this legal
matter to any other person for purposes of ensuring it's proper legal
service for that reason on March 18, 2018
I turned over to prison officials in a timely fashion at the above
address the afore stated documents for forwarding to the clerk of the
court as well as to all parties so that the prison authorities may post it
through the prison log system. I have therefore served the following:

NOTICE OF APPEAL

The original plus the requiret copies to the court and a conformed
copy to the parties or responden attorney`s ,in a sealed
Envelope with fully prepaid postage addressed as follow:

[1] United States District Court
Eastern District of California
2500 Tulare St.Suite#1501
Fresno, CA 93721

[2] U.S. COURT OF APPEALS
FOR THE NINTH CIRCUIT
P.O. BOX 193939
San Francisco, CA 94119

[3] Office of the Attorney General
2550 Mariposa Mall RM#5090
Fresno, CA 93721

I declare under penalty of perjury and under the laws of the state of
California that the foregoins is true and cerret Pursuant to 28 U.S.
CA. & 1746(2), mail box rule& 2244 (d)(2) Smith-v-Duncan, 297 F. 3d
809,814 (9th Cir .2000); Huizar-v-Carey, 273 F.3d 1220,1223 (9th
Cir.2001.)

DATE: MARCH 19, 2018 Signature: _____
ALFREDO PROVENCIO