Alfredo Provencio
AM4049/RB-244Up
CTF-North-A
P.O. BOX 705
Soledad,CA 93960

R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AUG 2 0 2018

FILED _____
DOCKETED _____ ____
DATE      INITIAL

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ALFREDO PROVENCIO,            )
                             )
     Petitioner-Appellant,    )
                             )
Vs.                           )
                             )
SHAWN HATTON, Warden,         )
                             )
     Respondent-Appellee.     )
                             )
_____ )

Case No. 18-15170
[Dist.Ct.No. 1:15-cv-01327-LJO-MJS

PETITION FOR REHEARING AND
SUGGESTION FOR EN BANC REVIEW

Ninth Circuit Rule 35-1
FRAP 35(a)(b)

TO: THE HONORABLE JUDGES OF THE UNITED STATES

COURT OF APPEALS FOR THE NINTH CIRCUIT

Alfredo Provencio, Petitioner-Appellant ("hereinafter "

Petitioner"), Appearing in Pro-Per due to Indigence, Seeks

REHEARING AND SUGGESTION FOR EN BANC REVIEW of the August 03,

2018 Decision of judges SCHROERER AND HURWITZ        of the

Ninth  Circuit Court of Appeals Denying petitioner's request

for Certificate of Appealability (COA) Pursuant to 28 U.S.C.§

2253 (c)(2). 1./

_____

    1./ This is not a Capital Case petitioner was Convi-
cted of  continuous sexual abuse of a child

-1-

## INTRODUCTION

1. On March 19, 2018, Petitioner filed an application for Certificate of Appealability (COA) Pursuant to 28 U.S.C.§2253(c), FRAP, Rule 22, In the United States Court of Appeals for the Ninth Circuit Seeking to appeal the Eastern District Court's denial of his 28 U.S.C.§2254, PETITION for Writ of Habeas Corpus.

2. On August 03, 2018, The Honorable Ninth Circuit Judges Issued an Order Denying petitioner's request for COA, Stating

### REASONS FOR GRANTING REHEARING
### AND SUGGESTIONS FOR EN BANC REVIEW

The Issues sought to be Appeqled to this Court in the request for Certificate of Appealability (COA) and those Issues raised in the 28 U.S.C.§2254, Petition for writ og habeas corpus Are: (1) THAT PORTIONS OF HIS INTERVIEW WITH THE POLICE SHOULD HAVE BEEN SUPPRESSED PURSUANT TO MIRANDA; (2) INSTRUCTIONAL ERROR WHICH RESULTED IN PREJUDICIALLY CONFIUSION AS TO THE APPLICABLE STATE OF MIND FOR THE OFFENSE OF CONTINOUS SEXUAL ABUSE OF A MINOR; And (3) THAT THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING THAT PETITIONER CAUSED GREAT BODILY HARM TO THE VICTIM.

Each of these issues present a significant denial of petitioner's constitutional rights 5th, 6th, 8th, and 14th Amendments of the United States Constitution and As a Jurists of Reason , Such jurists could disagree with the District Court's Resolution of these Constitutional claims and are Adequate to Deserve Encouragement to Proceed Further.

-2-

Because Petitioner has Raised Significant Constitutional Issues Under 28 U.S.C.§2253(c), FRAP, Rule 22. The denial of his request for Certificate of Appealability Deserves to be Considered by this Court on **Rehearing and Suggestion for En Banc Review**.

### ISSUES ON WHICH REHEARING AND SUGGESTION FOR EN BANC REVIEW IS SOUGHT

WHETHER, the presiding Judges properly Denied petitioner's request for Certificate of Appealability (COA) when the Issues presented on appeal are substantial constitutional issues such as:

I.   WHETHER THE EASTERN DISTRICT COURT ERRED IN FAILING TO GRANT AN EVIDENTIARY HEARING ON PETITIONER'S CLAIMS;

II.   WHETHER PORTION OF PETITIONER'S INTERVIEW WITH POLICE SHOULD HAVE BEEN SUPPRESSED PURSUANT TO MIRANDA;

III.   WHETHER THE ALLEGED INSTRUCTIONAL ERROR IN THIS CASE RESULTED IN A HIGHLY PREJUDICIAL AND REVERSIBLE ERROR AND IN A REVERSIBLE CONFUSION AS TO THE APPLICABLE STATE OF MIND FOR THE OFFENSE OF CONTINOUS SEXUAL ABUSE OF A MINOR; And

IV.   WHETHER THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING THAT PETITIONER CAUSED GREAT BODILY HARM TO THE VICTIM.

These issues are brought and were argued under the 5th, 6th, 8th and 14th Amendments of the United States Constitution.

///

///

///

-3-

REASONS FOR GRANTING THE PETITION
FOR REHEARING/REHEARING EN BANC
REASONABLE JURISTS COULD DIFFER AS TO
WHETHER THE EASTERN DISTRICT COURT ERRED
IN FAILING TO GRANT AN EVIDENTIARY
HEARING ON PETITIONER'S CLAIMS

In this particular case Petitioner a pro se litigant filed his petition for writ of habeas corpus under 28 U.S.C.§2254, in which he raised inter alia that (1) portions of his interview with police should have been suppressed pursuant to Miranda; (2) instructional error resulted in confusion as to the applicable state of mind for the offense of continous sexual abuse of a minor; and (3) there was insufficient evidence to support a finding that Petitioner caused great bodily harm to the victim.

Under §2254 (e)(2) As Amended by the AEDPA a District Court Shall not hold an Evidentiary Hearing, "If the applicant has failed to Develop the factual basis of the claim in State Court Proceedings" See Jones v.Wood,114 F.3d 1002 at 1013 (9th Cir.1997).  However, " failure to develope the factual basis of a claim is not establish- ed unless there is a lack of diligence, or some greater fault attributable  to the prisoner or the prisoner's counsel."  See Williams v. Taylor (2000) 529 U.S. 420, 423, 120 S.Ct. 1479; Baja v.Pucharme, 187 F.3d 1075, 1078 (9th Cir. 1999).

In this Particular and extraordinary case although petitioner is in the dark with no experience or even with the most comun or basic aknowledge on how to litigate as is evident in his petition, petiti- oner has exercised diligence in bringing his constitutional claims before state and federal cours and has not failed to develope the factual bases of either of his claims, Rather the State Court and most resently the District Court has denied him the opportunity to

1  Develope the factual facts by failing  to hold and evidentiary
2  hearing and as such the District court was required to hold an
3  evidentiary hearing in the interest of justice, and the failure to
4  do so constitutes a denial of access to the courts and a miscarriage
5  of justice.  Townsend v. Sain (1963) 372 U.S. 293,312, 83 S.Ct.745,
6  Overruled on other grounds in Keeney v.Tamayo-Reyes (1992)504 U.S.
7  1,4, 112 S.Ct. 1715; Insyxiengmary v.Morgan, 403 F.3d 657,699
8  (9th Cir. 2000).

9     Petitioner raises several colorable claims for relief, each
10 deserving to be heard at an evidentiary hearing, and each in their
11 own capacity would establish the right to relief....As a General
12 Rule when a petitioner meets the AEDPA threshold and the petitioner
13 raises a colorable claim for relief that rest on a credibility
14 determination.  The Court should not deny the petition without an
15 evidentiary hearing, because such a denial constitutesan abuse of
16 discretion and a denial of access to the courts. Eart v.Ornoski,
17 431 F.3d 1158,1169 (9th Cir. 2005); See also Schriro v.Landrigain
18 (2007)--U.S.--127 S.CT.1993.(Refusal to grant Evidentiary Hearing
19 constitutes Abuse of Discretion and Denial of Access to the Courts)
20 Therefore, pursuant to Clearly Established Federal Law as determined
21 by the United States Supreme Court and as interpreted by this
22 Honorable Ninth Circuit Court of Appeals. Petitioner was entitled
23 to an evidentiary hearing as well as he is now entitled to a
24 Certificate of Appealability (COA), because  a Reasonable
25 Jurist of reason Could disagree  with the District Court resolution
26 of his Constitutional Claims.  Accordingly, COA Application
27 Should be granted and Attorney be Appointed for Petitioner's
28 Representation.

## REASONS FOR GRANTING THE PETITION
## FOR REHEARING AND EN BANC REVIEW

## REASONABLE JURISTS COULD DIFFER AS TO
## WHETHER PORTION OF PETITIONER'S
## INTERVIEW WITH POLICE SHOULD HAVE
## BEEN SUPPRESSED PURSUANT TO MIRANDA

In his Habeas Corpus Petition, Petitioner alleged that his constitutional rights were violated when he was interviewed by the police and due to his lack of experience and knowledge on how to prepare his claim he relied in his State Petition for Review and due to same lack of the most basic knowledge he did not file a Traverse which is a key procedural matter in the outcome and litigation and as such and in the interest of justice this Honorable Court should issue the requested COA and give the fair oportunity to litigate his claim with the assistance and representation of an Attorney.

In Miranda v. Arizona, 384 U.S.436,444 (1966), the United States Supreme Court held that "[t]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Thus, "Suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation. See Thompson v.Keohane,516 U.S. 99, 107 (1995); Miranda, 384 U.S. at 473-74. Once Miranda warnings have been given, "all questioning must cease" if a suspect makes a clear and unambiguous statement invoking his constitutional rights. See Smith v. Illinois, 469 U.S. 91, 98 (1984).

///

-6-

1    Miranda warnings are required only when a suspect interrogated
2   by the police is "in custody." Thompson, 516 U.S. at 102.
3   Custodial interrogation means "questioning initiated by law enfor-
4   cement officers after a person has  been taken into custody or
5   otherwise deprived of his freedom of action in any significant way."
6   Miranda,384 U.S.at444.  The relevant question is whether a "reaso-
7   nable person [would] have felt he or she was not at liberty to ter-
8   minate the interrogation and leave." Thompson, 516 U.S. at 112.
9   Resolving this question requires consideration of the following
10  two inquires:  (1) what were the overall circumstances surrounding
11  the interrogation; and (2) given those circumstances, would a
12  reasonable person in the suspect's situation have felt free to
13  terminate the interrogation and leave.  J.D.B. v.North Carolina,
14  564 U.S. 261, 270 (2011).  This is an objective inquiry.  Thus,
15  "Subjective views harbored by either the interrogating officers or
16  the person being questioned are irrelevant." Id.  (internal
17  quatation marks and citation omitted).
18   In this particular and extraordinary case, after agreeing to
19  speak with detectives about an unknown matter at the police station,
20  petitioner was taken from his front yard in the back of a patrol
21  car to the station where questioning began by a detective in an
22  interview room.  Petitioner was told he was free to leave.  After
23  interviewing petitioner for about an hour, the detective left the
24  room and returned with another detective.  The questioning became
25  accusatory.  The detective told petitioner they had completed a
26  "bunch" of interviews, their investigation clearly showed petiti-
27  oner was sexually abusing his daughter, the detectives wanted to
28  know why and asked petitioner if it was because he was not getting

1 attention from his wife. Petitioner responded by nodding his head

2 and saying. "mhm." The detective continued, stating he understood

3 that petitioner's daughter was a pretty girl and appellant knew he

4 was not getting the attention he deserved as a man from his wife.

5 At that point petitioner responded by nodding his head and stating:

6     Answer: mhm. I think at this point I mean you guys basically

7 already arrested me. I should get an attorney or something.

8     Question: Is that what you're asking for an attorney?

9     Answer: I don't want to talk. I don't want to say anything

10 I shouldn't say.

11     Question:mhm. Its your choice.

12     Answer: Yeah, I mean I have talked to you I've told you

13 everything.

14     Question: But you really haven't told me anything, that's

15 the thing.

16     Answer: No, I told you what I feel and I'm telling you what

17 I feel right now.

18     Question: And what is that? What do you feel right now?

19     Answer: That...that I should get an attrorney. These are

20 serious charges you're talking about.

21     Question: You have no idea.

22     Answer: No, I do.

23     Question: Here's the thing its that you are being charged

24 with the allegations are that you've been abusing her.

25     Answer: Yeah, I...I understand.

26     Question: For seven years.

27     Answer: I understand.

28     Question: Straight.

1    Answer: I understand.

2    Question: Not only.

3    Answer: Understand I don't have a family anymore now.  Do you

4 understand that?

5    Question: I do.

6    Answer: So everything that I am working for and doing that's

7 gone.  This is extremely serious.  This is my life, over.

8    Question:  That's why I would think that you would want to get

9 your side of the story out.

10    Answer:  No.  What I want to do is make sure that I have an

11 attorney before I say anything else.

12    Question:  Ok.  That's cool.

13  Id at CT 185-186.

14  If police take a suspect into custody and t hen interrogate the

15 person without informing of such rights, the person's responses

16 cannot be introduced into evidence to establish his or her guilt.

17 See Berkemer v.McCarty(1984) 468 U.S. 420, 429; Stanbury v. Cali-

18 fornia(1994) 511 U.S. 318,322;Howes v.Fields(2012) 565 U.S. 499,

19 508-509.  Miranda's primary concern is the "psychological pressures

20 'which work to undermine the individual's will to resist and to

21 compel him to speak where he would not otherwise do so freely,'"

22 which are created by ""incommunicado interrogation"" in an unfamiliar

23 "'police-dominated atmosphere.'" Maryland v.Shatzer(2010)559 U.S.

24 98, 103.  The Miranda court reasoned that "[u]nless adequate

25 protective devices are employed to dispel the compulsion inherent

26 in custodial surroundings, no statement obtained from the defendant

27 can truly be the  product of his free choice." Miranda, Supra,

28 384 U.S. at p. 458.

1   In determining whether a person is in custody for purposes of
2   applying Miranda, the issue is whether, in light of the "'objective
3   circumstances of the interrogation,' [citation], ' a reasonable
4   person [would] have felt he or she was not at liberty to terminate
5   the interrogation and leave.'" howes, Supra, 565 U.S. at p. 509.
6   "And in order to determine how a suspect would have 'gauge[d]' his
7   'freedom of movement,' courts independly examine 'all of the
8   circumstances surrounding the interrogation.'" (Ibid.)

9   Courts have identified factors that are relevant in determining
10  whether the defendant was in custody during police questioning.
11  People v. Aguilera (1996) 51 Cal.App. 4th 1151,1161, at p.1162.
12  "No one factor is dispositive.  Rather, the Reviewing court should
13  look at the interplay and combined effect of all the circumstances
14  to determine whether on balance they created a coercive atmosphere
15  such that a  reasonable person would have experienced a restraint
16  tantamount to an arrest." (Ibid.)  The relevant factors include:

17          "[(1)]   Whether contact with law enforcement
            was initiated by the police or the person
18          interrogated, and if by the police, whether
            the person voluntarily agreed to an interview;
19

20          "[(2)]   whether the express purpose of the
            interview was to question the person as a
21          witness or a suspect;

22          "[(3)]   where the interview took place;

23          "[(4)]   Whether police informed the person that
            he or she was under arrest or in custody;
24

25          "[(5)]   Whether they informed the person that
            he or she was free to terminate the interview
26          and leave at any time and/or whether the
            person's conduct indicated an awareness of
27          such freedom;

28  ///

-10-

1  "[(6)]  Whether there were restrictions on the
2      person's freedom of movement during the
        interview;

3  "[(7)]    How long the interrogation lasted;

4  "[(8)]    How many police officers participated;

5  "[(9)]    Whether they dominated and controlled
        the course of the interrogation;

6
7  "[(10)]    Whether they manifested a belief that
        the person was culpable and controlled the
        course of the interrogation;

8
9  "[(11)]    Whether the police were aggressive,
        confrontational, and/or accusatory;

10  "[(12)]    Whether the police used interrogation
        techniques to pressure the suspect; and

11
12  "[(13)]    Whether the person was arrested at the
        end of the interrogation."  (Ibid.)

13      Petitioner is entitled to the requested COA and Habeas Corpus

14  Relief in Light of <u>Miranda</u>, because he meet the treshold requireme-

15  nts as follow:

16      1.:  Petitioner voluntarily agreed to be questioned by

17  detectives about unknown matter at the police station, He was taken

18  from his yard in the back of a patrol car to the police station

19  where questioning began by a detective in an interview room.  Peti-

20  tioner was told he was free to leave.    However, even where a susp-

21  ect voluntarily goes t o a police station for an interview if "once

22  there, the circumstances become such that a reasonable person would

23  not feel free to leave, the interrogation can become custodial."

24  See <u>United States v.Kim</u>(9th Cir. 2002) 292 F.3d 969,975.

25      2.2.:  The express purpose of the interview was to question

26  petitioner as a suspect, i.e., He was taken from his home in the

27  back of a squad car and placed in a room with two detectives, one

28  of whom accused him of child molestation.    The detective advised

-11-

1  petitioner they had conducted a "bunch" of interviews and they

2  knew he had done it and merely wanted to know why?. There were no

3  other witnesses. Given the tenor and manner of the detective's

4  interrogation, the sole purpose of the questioning was to obtain a

5  confession. Berkemer v.McCarty(1984)468 U.S. 420,442.

6      3.: The interrogation of petitioner occurred behind a close

7  door in the interrogation room of the Hanford Police Department  by

8  two detectives (Det.Mathews and his partner Det.        ). At the

9  police station, "the detectives possessed all the advantages inclu-

10 ding but not limited to the principal psychological factors. See

11 Miranda, Supra,384 U.S. at p.449.

12     4.: At the outset, Detective Mathews told petitioner after

13 questioning began that he was free to leave. However, After intervi-

14 ewing petitioner for about an hour, the detective left the room and

15 returned with another detective and the questioning become accusa-

16 tory. i.e., The detective told petitioner they had completed a

17 "bunch" of interviews, their investigation clearly showed petitioner

18 was sexually abusing his daughter. This interview was recorded

19 with audio and video equipment, which clearly shows that the

20 circumstances had significantly changed. No longer were police

21 asking petitioner  about unknown matter...The detectives  asked an

22 unrelenting number of accusatory questions, the detective just

23 wanted to know why and asked petitioner if it was because he was

24 not getting attention from his wife.

25  The mere recitation of the statement that the suspect is free to

26 leave or terminate the interview...does not render an interrogation

27 non-custodial per se. United States v. Craighead(9th Cir. 2008)

28 539 F.3d 1073, 1088. This Honorable Reviewing Court must consider

-12-

1 the delivery of the statements within the context of the scene as a
2 whole.  (Ibid.)  This is because the Miranda test for custody "does
3 not  ask whether the suspect was told that he was free to leave;
4 the test asks is whether 'a reasonable person [would] have felt he
5 or she was not at liberty to terminate the interrogation and leave."
6 As Professor Wayne LaFave has pointed out in his treatise, Criminal
7 Procedure, when a suspect has been told by the police that he is
8 not under arrest and can leave at any time, but the contemporaneous
9 conduct of the police nullifies that advice, the advice "will not
10 carry the day." (2 LaFave et al., Criminal Procedure (4th Ed.2015)
11 §6.6 (d),p.820, fn.64.)  Courts have concluded that, under the
12 circumstances of the particular case, advising the suspect that he
13 was not under arrest and was free to leave was insufficient to
14 support a conclusion that he was not in custody for purposes of
15 Miranda.  See United States v.Hashime (4th Cir. 2013) 734 F.3d 278,
16 284 [telling the individual being interrogated he is free to leave
17 "is not "talismanic" or sufficient in and of itself to show a lack
18 of custody"]; United States v.Cavazos (5th Cir.2012) 668 F.3d 190,
19 195.

20     5.:  Although petitioner was not handcuffed and first only
21 Detective Mathews interrogated petitioner , after about one hour
22 the detective left the room and returned with another detective and
23 at this point the questioning become accusatory....This extraor-
24 dinary factors wight in favor of finding that petitioner was in
25 custody.

26     6.: The remaining factors involve the nature of the inte-
27 rrogation:  Whether the police/detectives (1) dominated and contro-
28 ///

1   lled the interrogation; (2) manifested a belief petitioner was

2   culpable and they had evidence to prove it; (3) were aggressive,

3   confrontational, and accusatory; (4) used interrogation techniques

4   to pressure petitioner; and (5) arrested petitioner at the end of

5   the interrogation. See Aguilera, Supra, 51 Cal.App. 4th at p.1162.

6   All these weigh strongly in favor of a determination that petitioner

7   was in custody. United States v.Beraun-Panez(9th Cir. 1987) 812 F.2d

8   578,579;People v. Lopez(1985) 163 Cal.App.3d 602, 608, fn.4.

9   Accusatory questioning is more likely to communicate to a reasonable

10   person in the position of petitioner that he was not free to leave.

11      7.: After petitioner was accused of molesting the victim. he

12   invoked his right to counsel and the detective continue to ask

13   accusatory questions and arrested him.

14      8.: Taking into consideration all the factors, this Honorable

15   court should issue the requested COA and conduct a denovo review

16   because the factual evidense shows that a reasonable person in

17   petitioner's circumstance would not have felt free to leave. Thus,

18   Petitioner was in custody during the interrogation and his inter-

19   view was inadmissible.

20      The court of appeals as well as the District court relied on

21   People v.Moore(2011) 51 Cal.4th 386,402-403 in concluding there

22   had been no custodial interrogation in petitioner's case. (Cal. Ct

23   of Appeals Opn.pp.9-13; and District Court findings and recommen-

24   dations at pp.10-20.) However, Moore is not on point because the

25   interrogation there was vastly different from Petitioner's.

26      i.e., In Moore, a police officer asked the defendant, who

27   was the last person to see the victim alive, to give a witness

28   statement at the police station. (Moore,Supra,51 Cal.4th at p.396.

1  Once in the police station interview room, a police investigator

2  told the defendant he was not under arrest and was free to leave.

3  (Id. at p.402).  The defendant was not restrained, and he was

4  interviewed for one hour and 45 minutes.  (Ibid.)  The questioning

5  initially focused on filling in the details of the defendant's

6  story as a witness rather than as a  suspect, but "[a]fter a while.

7  ....the detectives interjected some more accusatory and skeptical

8  questions."  (Ibid.)  The investigators asked the defendant whether

9  he burglarized the victim's house, they urged the defendant to be

10  honest, and they asked various questions about the defendant's prior

11  arrests and other matters that "conveyed their suspicion of the

12  [the] defendant's possible involvement."  (Ibid.)  The police

13  ultimately declined the defendant's request to be taken home and

14  read the defendant Miranda advisement.  Moore, at pp.401-402.

15      The California Supreme Court concluded the defendant in Moore was

16  not in custody during the bulk of the interview, reasoning.  "At

17  least until [the] defendant first asked to be taken home and his

18  request was not granted, a reasonable person in [the] defendant's

19  circumstances would have believed, despite indications of police

20  skepticism, that he was not under arrest and was free to terminate

21  the interview and leave if he chose to do so."  Moore,Supra, 51 Cal.

22  4th at p.403.  Significantly, in making this determination, the

23  Court stated the interview was "not....particulary intense or

24  confrontational." (Id. at p.402).

25      In Moore, "police consistently conveyed to [the] defendant that

26  they wanted to question him only as a witness; [the] defendant

27  sought and received the assurance that he was being asked only to

28  give a statement of what he had seen and heard that day."  Moore,

-15-

1  Supra, 51 Cal.4th at p.403.  In sharp contrast in this particular
2  case nearly all of petitioner's interrogations by the  Detectives
3  of Hanford Police Department were pointed and accusatory....Detective
4  Mathews treated petitioner as guilty, confronted him with evidence
5  of his guilt.

6      In this particular and extraordinary case the error was highly
7  prejudicial which is reversible per se.....The revieweng court
8  review Miranda  errors under the 'harmless beyond a reasonable
9  doubt' standard propounded in Chaptman v. California, 51 Cal.App.
10 4th at p.1166......Since "A confession is like no other evidence.
11 Indeed, the defendant's own confession and statement is probably
12 the most probative and damaging evidence that can be admitted
13 against him."..See Arizona v. Fulminante(1991) 499 U.S. 279, 296.
14 The erroneous admission and reading of the transcripts of the
15 interview of petitioner's to the jury and a viewing of the video
16 recording that show petitioner's nodding of the head and his "mhm"
17 responses which were part and parcel of his invocation of his
18 Miranda rights such that they should have been excluded on that
19 basis....the error was highly prejudicial and is reversible per se.
20     Thus, Petitioner has satisfied the prong and test requirements
21 for obtaining a COA because this Miranda claim alleged the denial
22 of a federal Constitutional right and is therefore necessary to
23 determine whether the District Court denial constitute an abuse of
24 discretion and or a miscarriage of justice and whether this case
25 should be remanded to the district court for an evidentiary hearing
26 or remanded to the state courts with directions to retry petitioner
27 without the interview evidence as inadmissible if the state chose
28 to retry this matter.

REASONS FOR GRANTING THE PETITION
FOR REHEARING AND EN BANC REVIEW

REASONABLE JURISTS COULD DIFFER AS TO
WHETHER THE ALLEGED INSTRUCTIONAL
ERROR IN THIS CASE RESULTED IN A
HIGHLY PREJUDICIAL AND REVERSIBLE
ERROR AND IN CONFUSION AS TO THE
APPLICABLE STATE OF MIND FOR THE
OFFENSE OF CONTINOUS SEXUAL ABUSE
OF A MINOR

In his habeas corpus petition (28 U.S.C.§2254), Petitioner alleged that the trial court instructional error resulted in confiusing the jurors as to the applicable state of mind for the offense of continous sexual abuse of a minor. i.e., the trial court instructed the jury that continous sexual abuse of a minor was a general intent offense even though there was evidence that some of the alleged conduct was lewd and lascivious act, a specific offense. (CT 127, 7RT 1105-1106.) Although the trial court did note in the instruction on lewd and lascivious acts with a minor and lewd and lascivious acts with a minor by force the requirement for a specific intent, the trial court failed to tie any such requirement to count 20, continous sexual abuse of a minor. (CT 127, 7RT 1106-1107.)

More specifically, as far as continous sexual abuse of a child under 14, the trial court instructed the jury that the defendant must have engaged "in three or more acts of substantial sexual conduct or lewd or lascivious conduct with the child." (6RT 945-947, CT 139.) The instruction also advised the jury that for lewd or lascivious conduct, any willful touching of a child must be "accomplished with the intent to sexually arouse the perpetrator or the child." (6RT 946, CT 139.) The instruction also informed the jury that "You cannot convict the defendant unless all of you

-17-

1    agree that he committed three or more acts over a period of at

2    least three months, but you do not all need to agree on which three

3    acts were committed." (CT 139, 6RT 946).

4    Petitioner contends that the trial court's instruction that

5    continous sexual abuse of a child under 14 required a general

6    criminal intent was wrong and highly prejudicial, although its

7    other instructions properly advised the jury of the specific

8    intents required for lewd acts by force.

9    Because the jury was also informed that it need not agree on

10    which three acts the defendant committed, is there not a significant

11    probability that al least some jurors found one or more of the

12    offenses committed were lewd and lascivious acts on a minor or lewd

13    acts by force on a minor.? COA is necesary to determine whether

14    there is a reasonable  probable that in view of the trial court's

15    instructional error that continous sexual abuse only required a

16    general criminal intent some jurors believed petitioner had

17    committed lewd and lascivious acts and made no finding that the

18    acts were accomplished with the requisite specific intent.

19    Thus, petitioner  has satisfied the prong test and requirements

20    for obtaining the requested COA because the  erroneous instructi-

21    onal error violated petitioner's rights to a unanimous verdict by

22    jury and  due process of law  guaranteed by the Fifth, Sixth and

23    Fourteenth Amendments of the United States Constitution.

24

25

26

27

28

REASONS FOR GRANTING THE PETITION
FOR REHEARING AND EN BANC REVIEW

REASONABLE JURISTS COULD DIFFER AS TO
WHETHER THERE WAS INSUFFICIENT EVIDENCE
TO SUPPORT A FINDING THAT PETITIONER
CAUSED GREAT BODILY HARM TO THE VICTIM

In his habeas corpus petition, Petitioner also alleged that, there was insufficient evidence to support a finding that Petitioner caused great bodily harm to the victim....Rather, there was simply no evidence that any force used was more than was necessary to accomplish the alleged offenses. The California Court of Appeals holds that the bruises of the victim's arms, along with her rectal bleeding and pain following petitioner's forcible sodomization of her, amounted to bodily harm within the meaning of section §667.61 (Opn.at p.19.) However, in this particular case there was not evidence which is reasonable, credible, and of solid value....such that a rational trier of fact could find the defendant/petitioner guilty beyond a reasonable doubt of inflicting bodily harm resulting from the use of force. See People v. Castaneda(2011) 51 Cal.4th 1292,1322; Jackson v.Virginia,Supra (1979) 443 U.S. 307, 317-320.; People v.Maury(2003) 30 Cal.4th 342,403; People v.Boyer(2006) 38 Cal.4th 412,480.

In People v.Washington (2012)210 Cal.App.4th 1042,1047, The court noted that a finding of great bodily injury injury will be sustained when there is "some physical pain or damage, such as lacerations, brusies, or abrasions." The Washington court cited People v.Jara-millo(1979)98 Cal.App.3d 830,836-837; People v.Sanchez(1982) 131 Cal.App.3d 718,733.;People v.Escobar(1992)3 Cal.4th 740; People v. Caudillo(1978)21 Cal.3d 562;People v.Cross(2008)45 Cal.4th 58.
///

-19-

1   Thus, petitioner has satisfied the prong test and requirements

2  for obtaining the requested COA because petitioner was deprived

3  of his constitutional Due Process Clause which protects the accused

4  against conviction except upon proof beyond a reasonable  doubt

5  of every fact and elements necessary to constitute the crime with

6  which he is charged.  See In re Winship,397 U.S.358,364 (1970).

7   Accordingly Rehearing and en Banc Review consideration of the

8  denial denial of the Issuance of a Certificate of Appealabiluty

9  which is necesary because the presiding judges overlooked and

10  decided this case in conflict with the material  lane of cases in

11  which the United States Supreme Court has set forth with the

12  Standard for the issuance of a Certificate of Appealability in

13  Slack-v-McDaniel, 529 U.S. at 483-84; Miller-v-Cockrell, 537 U.S.

14  322.

-20-

1

<u>CONCLUSION</u>

2     For the foregoing reasons.  Petitioner respectfully request

3 that the instant petition for rehearing and EN BANC REVIEW

4 consideration be granted and that the Appeal re Heard EN BANC.

5

6

7  DATE: <u>August   16, 2018</u>

8

9

10

11            Respectfully Submitted,

12

13  By: _Alfredo Provencio_

14       Alfredo Provencio

15       Petitioner-Appellant

16       In Pro Per.

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE
# DECLARATION OF SERVICE BY U.S. MAIL

I, Alfredo Provencio ,CDCR#: AM4049 ,declare that I am over the age of eighteen (18 ) years and I am the petitioner or plantiff in this cause of action: FEDERAL HABEAS CORPUS AND SUBSEQUENT APPEAL AND COA APPLICATION

Filed or currently pending before this honorable court as case N. 18-15170

My mailing adreess is: CTF-RB-244Up
P.O. BOX 705   Soledad, CA 93960

Due to my in carceratio I`m not able to entrust the mailing of this legal matter to any other person for purposes of ensuring it`s proper legal service for that reason on August 16, 2018
I turned over to prison officials in a timely fashion at the above address the afore stated documents for forwarding to the clerk of the court as well as to all parties so that the prison authorities may post it through the prison log system. I have therefore served the following:
PETITION FOR REHEARING  AND SUGGESTION FOR AN EN BANC

REVIEW  AND ONE EXHIBIT

The original plus the requiret copies to the court and a conformed copy to the parties or responden attorney`s ,in a sealed Envelope with fully prepaid postage addressed as follow:

[1] U.S. Court of Appeals
for the Ninth Circuit
P.O. BOX 193939
San Francisco, CA 94119

[2] Office of the Attorney General
2550 Mariposa Mall RM# 5090
Fresno, CA 93721

I declare under penalty of perjury and under the laws of the state of California that the foregoins is true and cerret Pursuant to 28 U.S. CA. & 1746(2), mail box rule& 2244 (d)(2) Smith-v-Duncan, 297 F. 3d 809,814 (9th Cir .2000); Huizar-v-Carey, 273 F.3d 1220,1223 (9th Cir.2001.)

DATE: August 16, 2018      Signature: Alfredo Provencio
Alfredo Provencio

# EXHIBIT COVER PAGE 

EXHIBIT

Description of this exhibit:

Ninth Circuit Court of Appeals
Order Denying COA Dated August 3,2018

Number of pages to this exhibit:_____**2**_____pages

**JURISDICTION**: (Check One Only)

- ☐ MUNICIPAL COURT
- ☐ SUPERIOR COURT
- ☐ APPELLATE COURT
- ☐ STATE SUPREME COURT
- ☐ UNITED STATES DISTRICT COURT
- ☒ STATE CIRCUIT COURT
- ☐ UNITES STATES SUPREME COURT
- ☐ GRAND JURY

UNITED STATES COURT OF APPEALS

# FILED

FOR THE NINTH CIRCUIT

AUG 3 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ALFREDO PROVENCIO, | No. 18-15170 |
| Petitioner-Appellant, | D.C. No. 1:15-cv-01327-LJO-MJS |
| v. | Eastern District of California, Fresno |
| JOE LIZARRAGA, | |
| Respondent-Appellee. | ORDER |

Before: SCHROEDER and HURWITZ, Circuit Judges.

This appeal is from the denial of appellant's 28 U.S.C. § 2254 petition and

subsequent Federal Rule of Civil Procedure 59(e) motion. The request for a

certificate of appealability (Docket Entry No. 5) is denied because appellant has

not shown that "jurists of reason would find it debatable whether the petition states

a valid claim of the denial of a constitutional right and that jurists of reason would

find it debatable whether the district court was correct in its procedural ruling."

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also* 28 U.S.C. § 2253(c)(2);

*Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012); *Miller-El v. Cockrell*, 537 U.S.

322, 327 (2003); *United States v. Winkles*, 795 F.3d 1134, 1143 (9th Cir. 2015),

*cert. denied*, 136 S. Ct. 2462 (2016); *Lynch v. Blodgett*, 999 F.2d 401, 403 (9th Cir.

1993) (order).

Any pending motions are denied as moot.

**DENIED.**

18-15170